**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CHRIS VAN HOLLEN,<br>    1707 Longworth Office Building<br>    U.S. House of Representatives<br>    Washington, DC 20515<br><br>DEMOCRACY 21,<br>    2000 Massachusetts Ave. NW<br>    Washington, DC 20036,<br><br>CAMPAIGN LEGAL CENTER,<br>    215 E St. NE<br>    Washington, DC 20002,<br>                    and<br><br>PUBLIC CITIZEN, INC.,<br>    1600 20th St. NW<br>    Washington, DC 20009,<br><br>                         *Plaintiffs*,<br>        v.<br><br>INTERNAL REVENUE SERVICE,<br>    1111 Constitution Ave. NW<br>    Washington, DC 20224,<br>                    and<br><br>DEPARTMENT OF THE TREASURY,<br>    1500 Pennsylvania Ave. NW<br>    Washington, DC 20220,<br><br>                         *Defendants*. | No. _____ |

## COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MANDAMUS RELIEF

### Introduction

1.      Plaintiffs Chris Van Hollen, Democracy 21, Campaign Legal Center, and Public Citizen bring this action under the Administrative Procedure Act (APA), 5 U.S.C. §§ 702, 703, 704, and 706(1) & (2)(A), to compel agency action unlawfully withheld and unreasonably delayed, and to set aside agency action that is contrary to law. Defendant Internal Revenue Service (IRS) has for many years violated the Internal Revenue Code (IRC) by allowing tax-exempt social welfare organizations to expend substantial sums on electoral activity. The IRC

provides that tax-exempt social welfare organizations must be "exclusively" engaged in "promotion of social welfare." IRC § 501(c)(4). The IRS's implementing regulation recognizes that electoral activity does not fall within the scope of activity promoting social welfare. Treasury Regulation (TR) § 1.501(c)(4)-1(a)(2)(ii). But the IRS's regulation also purports to provide that an organization operates "exclusively" to promote social welfare as long as it is operated "primarily" for social welfare purposes. *Id.* § 1.501(c)(4)-1(a)(2)(i). By redefining "exclusively" as "primarily" in violation of the clear terms of its governing statutes, the IRS permits tax-exempt social welfare organizations to engage in substantial electoral activities in contravention of the law and court decisions interpreting it.

2.      The IRS has continued to adhere to this unlawful construction of the law in the face of a petition filed by plaintiffs Democracy 21 and Campaign Legal Center in July 2011 requesting that it revise its regulation to conform to the statute's requirements. The IRS has not commenced any rulemaking or even provided a substantive response to the petition.

3.      The IRS's continued failure to amend its regulation to correspond with the clear and nondiscretionary requirements of the law harms the plaintiffs in this action in a number of ways. It denies them information about the funding of election expenditures by section 501(c)(4) groups, because it allows such groups to claim tax-exempt status while engaging in electoral campaign spending without disclosing the identities of their contributors—disclosures that political organizations that properly claim tax exemption under section 527 of the IRC are required to provide. IRC § 527(j)(3). The IRS's inaction also means that candidates, such as plaintiff Van Hollen, and section 527 political organizations, such as the political committees operated by plaintiff Van Hollen, must compete on unequal terms with tax-exempt groups that are permitted to raise funds for electoral purposes without complying with the disclosure

requirements imposed on section 527 political organizations. To redress these injuries, plaintiffs request that the Court declare unlawful the IRS's inaction with respect to the petition that it amend its rules, and that the Court compel the IRS to commence proceedings to amend its rules to implement the statutory requirement that social welfare organizations operate exclusively for the advancement of social welfare.

4.     Instead of amending its rules to conform to the requirements of IRC section 501(c)(4), the IRS has recently taken action with precisely the opposite effect: It has issued a directive providing a "safe harbor" for certain organizations seeking exemption under section 501(c)(4) if they spend no more than 40% of their time and expenditures on electoral campaign activities and stating that even organizations that expend more than this percentage on electoral campaign intervention may qualify for tax–exempt status under section 501(c)(4) because the IRS may consider them to be "primarily" engaged in social welfare activities. The IRS's new directive confirms that the IRS interprets its regulation to allow substantial electoral campaign intervention by section 501(c)(4) organizations—intervention up to and in some circumstances exceeding 40% of their activity—despite the statutory requirement that they be exclusively engaged in social welfare activities. The IRS's action thus makes the extent of the conflict between its regulation and the statute even more explicit and will injure the plaintiffs by fostering increased electoral campaign spending without donor disclosure by ostensible section 501(c)(4) organizations. The plaintiffs therefore request that the Court declare the IRS's new "safe harbor" directive unlawful insofar as it permits section 501(c)(4) organizations to spend amounts up to and exceeding 40% of their time and money on electoral campaign intervention.

**Jurisdiction and Venue**

5.     This Court has jurisdiction over this action under 28 U.S.C. §§ 1331, 1340 and 1361.

6.      Venue is proper in this Court under 28 U.S.C. § 1391(e).

## Parties

7.      Plaintiff Chris Van Hollen is a Member of the United States House of Representatives representing the 8th Congressional District of the State of Maryland. Representative Van Hollen was first elected to the House of Representatives in 2002 and has been reelected in each succeeding Congressional election. He intends to run for reelection in 2014. In addition to his own campaign committee, Representative Van Hollen has a leadership PAC, the Victory Now PAC,  that, subject to the contribution limits and disclosure requirements imposed on federal political committees by the Federal Election Campaign Act (FECA), 2 U.S.C. §§ 431*ff*., raises and expends money to support other candidates running for federal office. Both Representative Van Hollen's campaign committee and the Victory Now PAC are tax-exempt under IRC section 527 and must operate under its requirements.

8.      Plaintiff Democracy 21 is a nonpartisan, nonprofit organization that works to strengthen our democracy, protect the integrity of our political system against corruption and provide for honest and accountable elected officeholders and public officials. The organization promotes campaign finance reform, lobbying and ethics reforms, transparency and other government integrity measures, conducts public education efforts to accomplish these goals, participates in litigation involving the constitutionality and interpretation of campaign finance laws and engages in efforts to help ensure that campaign finance laws are properly enforced and implemented.

9.      Plaintiff Campaign Legal Center is a nonpartisan, nonprofit organization that works on issues involving campaign finance and electoral reform, political communication and government ethics. The Campaign Legal Center offers nonpartisan analyses of issues and represents the public interest in administrative, legislative and legal proceedings. The Campaign

Legal Center also participates in generating and shaping our nation's policy debate about money in politics, disclosure, political advertising, and enforcement issues before the Congress, the Federal Communications Commission, Federal Election Commission (FEC) and the IRS.

10.     Plaintiff Public Citizen, Inc., is a nonpartisan, nonprofit membership organization headquartered in Washington, DC. Public Citizen advocates the interests of consumers and members of the public before Congress, administrative agencies and the courts on a wide range of issues. Prominent among Public Citizen's concerns has been combating the corruption of our political system, and as a result Public Citizen has long supported campaign finance legislation and advocated its enforcement. In connection with those activities, Public Citizen studies and reports on the role of money in elections and the influence of political spending on officeholders and the formation of public policy.

11.     Defendant IRS, a bureau of defendant United States Department of the Treasury, is the federal agency charged with administration and enforcement of the tax laws of the United States. The IRS is responsible for enforcing the requirements imposed by the IRC on tax-exempt organizations and issues regulations implementing those requirements, including the regulation at issue in this case. The United States Department of the Treasury is ultimately responsible for the operation of the IRS and the issuance of regulations implementing the IRC.

### Statutory Background

12.     Section 501 of the IRC provides that organizations meeting specified criteria are exempt from federal income taxation. Section 501(c)(4) provides such tax exemption to "civic leagues or organizations not organized for profit but operated *exclusively* for the promotion of social welfare …." (Emphasis added.) Section 501(c)(4) organizations are often devoted to advocacy with respect to public policy issues, because they are not subject to the strict

limitations on lobbying that are applicable to charitable organizations that claim tax exemption under section 501(c)(3).

13.     Organizations that qualify under section 501(c)(4) are exempt from income taxation, but contributions to them are not, for income-tax purposes, deductible from income for contributors, unlike contributions to section 501(c)(3) charitable organizations. However, while not allowing contributors to deduct contributions to 501(c)(4) organizations from income, the IRS does not currently attempt to collect gift tax from contributors on their contributions to section 501(c)(4) organizations.

14.     Section 501(c)(4) organizations are not required by the IRC to disclose the identity of their contributors publicly, and they typically do not do so.

15.     The social welfare activities to which the IRC requires section 501(c)(4) organizations to be "exclusively" devoted do not include intervention in election campaigns. IRS regulations provide that "[t]he promotion of social welfare does not include direct or indirect participation in political campaigns on behalf of or in opposition to an candidate for public office." TR § 1.501(c)(4)-1(a)(2)(ii).

16.     Another IRC provision, section 527, provides tax exemption for organizations that engage primarily in electoral activity. Section 527 organizations, which are operated primarily to influence or attempt to influence elections for public office, IRC § 527(e)(1), are generally exempt from federal income taxation. As in the case of section 501(c)(4) organizations, contributions to section 527 organizations are not tax-deductible for contributors, but such contributions are expressly exempted from gift taxation by IRC section 2501(a)(5).

17.     Section 527 organizations, unlike section 501(c)(4) organizations, must publicly disclose, on a quarterly basis, the identity of all contributors that contribute $200 or more

annually. IRC § 527(j)(3). Section 527 organizations such as Representative Van Hollen's committees that are also "political committees" under FECA, 2 U.S.C. § 431(4), must report their contributions under the terms of FECA—requirements comparable to those of section 527—and need not make separate reports under section 527. *Id*. § 527(j)(5).

### The IRS's Failure to Enforce IRC Section 501(c)(4)'s Plain Language

18.     The IRS has not enforced section 501(c)(4)'s requirement that a tax-exempt organization be operated "exclusively" to promote social welfare. Instead, contrary to the plain meaning of the statute, the IRS has permitted section 501(c)(4) organizations to engage in substantial activity that does not qualify as promotion of social welfare, including election campaign intervention. In 1959, the IRS promulgated TR § 1.501(c)(4)-1(a)(2)(i), which provides that "[a]n organization is operated exclusively for the promotion of social welfare if it is *primarily* engaged in promoting in some way the common good and general welfare of the people of the community" (emphasis added). As the IRS explained in an August 24, 2012, letter to U.S. Senator Carl Levin, the IRS has "interpreted 'exclusively' as used in section 501(c)(4) to mean primarily."

19.     The effect of the IRS's regulatory redefinition of section 501(c)(4)'s exclusivity requirement is to allow section 501(c)(4) organizations to engage in substantial amounts of activity that does not promote social welfare as long as they are "primarily" engaged in social welfare activities. Thus, although by the IRS's own definition social welfare activities do not include participation or intervention in election campaigns, the IRS takes the view that "an organization may carry on lawful political activities and remain exempt under section 501(c)(4) as long as it is primarily engaged in activities that promote social welfare." Rev. Ruling 81-95, 1981-1 C.B. 332.

20.     The IRS has not specifically defined "primarily," but TR § 1.501(c)(4)-1(a)(2)(i) is generally understood to require that just over 50% of an organization's activity must qualify as promotion of social welfare. Thus, the regulation is generally understood to mean that as much as 49% of a 501(c)(4) organization's budget may be spent on election campaign intervention or other non-social-welfare activities. Although the IRS had not previously stated expressly what percentage of a section 501(c)(4) organization's activities may be directed to electoral campaign intervention, the IRS has now expressly stated, in a report dated June 24, 2013, that it regards it as consistent with the presumptive availability of section 501(c)(4) tax-exempt status for an organization to spend up to 40% of its time and money on election campaign intervention, and that an organization may be eligible for exemption under section 501(c)(4), depending on the "facts and circumstances" of its activities, even if it spends more than 40% of its budget on election campaign intervention. The IRS's June 24, 2013 report, entitled *Charting a Path Forward at the IRS: Initial Assessment and Plan of Action* ("*Charting a Path*"), is attached hereto as Exhibit A and is discussed further below.

21.     The substantial spending on election campaign intervention in which the IRS permits a section 501(c)(4) organization to engage is contrary both to the statutory requirement that section 501(c)(4) organizations must be operated "exclusively" to promote social welfare and to court decisions interpreting that statutory requirement to prohibit "substantial" non-social welfare activity.

### The Effects of the IRS's Disregard of Section 501(c)(4)'s Plain Meaning

22.     The IRS's replacement of the statutory requirement that section 501(c)(4) organizations operate exclusively to promote social welfare with a regulatory standard that allows them to engage in substantial election campaign activity has resulted in a flood of electoral spending by ostensible section 501(c)(4) organizations. Because these organizations do

not report the sources of their contributions, as is required of political committees and other section 527 organizations, election-related spending by section 501(c)(4) organizations deprives other participants in the political process, including voters, candidates, and political organizations, as well as persons and organizations who desire to study the sources of influence on the political process, of critical information about the financial interests served by electoral campaign spending.

23.     Electoral campaign spending by section 501(c)(4) organizations soared after the U.S. Supreme Court's decisions in *FEC v. Wisconsin Right to Life*, 551 U.S. 449 (2007) (*WRTL*), and *Citizens United v. Federal Election Commission*, 558 U.S. 310 (2010), which, respectively, narrowly construed and then invalidated federal laws prohibiting corporate electoral campaign expenditures. In the wake of those decisions, section 501(c)(4) organizations became the vehicles of choice for mobilizing anonymous contributions for political purposes.

24.     In the 2008 presidential election cycle, following the decision in *WRTL*, section 501(c)(4) organizations reported to the FEC that they had engaged in election-related spending totaling over $82.7 million, after having reported only $7.6 million in the 2004 presidential election cycle, according to the Center for Responsive Politics. *See* http://www.opensecrets.org/ outsidespending/nonprof_summ.php.

25.     In the 2010 congressional elections, the first federal elections conducted after the *Citizens United* decision, section 501(c)(4) organizations reported more than $92 million in election-related spending to the FEC, according to the Center for Responsive Politics. *Id.* By contrast, in the 2006 congressional elections, section 501(c)(4) organizations had reported spending only $1.2 million. *See id.*

26.     In the 2012 presidential election cycle, section 501(c)(4) organizations increased their reported election-related spending still further, to over $256 million, a threefold increase over the amount spent in the 2008 presidential elections. *See id.*

27.     Individual section 501(c)(4) organizations spent very substantial amounts in these elections. In the 2008 election cycle, a dozen section 501(c)(4) groups reported election-related spending in excess of $1 million, with one group spending nearly $9 million. *See* http://www.opensecrets.org/outsidespending/summ.php?cycle=2008&chrt=V&disp=O&type=U. In the 2010 congressional elections, the number of 501(c)(4) organizations reporting election-related spending exceeding $1 million rose to 15. *See* http://www.opensecrets.org/ outsidespending/summ.php?cycle=2010&chrt=V&disp=O&type=U.   One of those groups reported spending $18.9 million, and another spent $16.7 million.

28.     In the 2012 presidential elections, the number of section 501(c)(4) organizations with at least $1 million in election-related spending had risen to 25, with seven spending more than $10 million. *See* http://www.opensecrets.org/outsidespending/summ.php?cycle=2012& chrt=V&disp=O&type=U. One group alone spent over $71 million; another spent $36.4 million; and another spent $25.4 million. *Id.*

29.     The increase in election campaign activity by section 501(c)(4) organizations is primarily responsible for a corresponding increase in electoral spending that is not accompanied by donor disclosure. Because section 501(c)(4) organizations, unlike political parties, political candidate committees, other FECA-regulated political committees (including PACs and "Super PACs") and other section 527 tax-exempt political organizations, are not required to disclose their donors publicly, their electoral campaign expenditures are almost entirely unaccompanied by donor disclosure. Only when donors specifically earmark contributions for particular electoral

campaign expenditures, which is extremely rare, do existing campaign finance regulations result in disclosure by section 501(c)(4) organizations. As a result, only about 30% of election-related spending by groups other than the political parties and candidate committees (often referred to as "outside" spending) in the 2012 presidential election was accompanied by donor disclosure, and approximately $310 million in electoral campaign spending was by non-disclosing groups (including section 501(c)(4) organizations as well as section 501(c)(6) organizations). *See* http://www.opensecrets.org/outsidespending/disclosure.php.

30.     The operators of politically active organizations have openly acknowledged that they make use of section 501(c)(4) precisely because IRS regulations allow section 501(c)(4) organizations to channel large amounts of money into elections while at the same time avoiding donor disclosure requirements applicable to other types of organizations. For example, Carl Forti, an official of the 501(c)(4) group Crossroads GPS and the affiliated Super PAC American Crossroads (which, unlike Crossroads GPS is a political committee subject to FECA disclosure requirements), has stated that "some donors didn't want to be disclosed, and, therefore, the (c)(4) was created." P. Overby, *Group Behind Election Ads Weighs In On Tax Deal*, National Public Radio (Dec. 14, 2010), http://m.npr.org/story/132060878. Similarly, the founders of a Super PAC supporting President Obama's reelection in 2012, Priorities USA Action, set up a parallel 501(c)(4) organization, Priorities USA, to allow donors who preferred that their identities not be disclosed to contribute to independent spending in support of President Obama.

31.     The huge electoral campaign expenditures without donor disclosure by section 501(c)(4) organizations are directly attributable to the IRS's regulation permitting such organizations to engage in substantial electoral campaign activity as long as they are "primarily" engaged in promoting social welfare. Politically active section 501(c)(4) organizations operate

on the understanding that they will retain their tax exemption as long as they can plausibly maintain that more than 50% of their activity is aimed at promoting social welfare, even though they engage in substantial election campaign intervention that itself is outside the scope of social welfare activity under section 501(c)(4). If the IRS were instead to enforce the requirement that section 501(c)(4) organizations engage exclusively in activity to promote social welfare, and thus refrain from engaging in substantial amounts of election campaign activity and expenditures, much of the electoral campaign spending currently carried out by section 501(c)(4) organizations would shift to other types of organizations—specifically, political committees regulated by FECA and other section 527 tax-exempt organizations—that are subject to donor-disclosure requirements. The resulting disclosures would materially advance the public's "interest in knowing who is speaking about a candidate shortly before an election." *Citizens United*, 558 U.S. at 369.

### The Rulemaking Petition and the IRS's Delay and Inaction

32.     On July 27, 2011, plaintiffs Democracy 21 and Campaign Legal Center submitted a formal petition for rulemaking to the IRS requesting that it revise TR § 1.501(c)(4)–1(a)(2)(i) to prohibit substantial election campaign expenditures by section 501(c)(4) organizations. The petition is attached to this Complaint as Exhibit B.

33.     Plaintiffs' rulemaking petition demonstrated that by purporting to interpret the statutory term "exclusively" to mean "primarily," TR § 1.501(c)(4)–1(a)(2)(i) conflicts with the plain meaning of section 501(c)(4) and with authoritative judicial precedents construing the term "exclusively" as used in section 501. *See* Exhibit B, at 2–3, 13–16.

34.     The rulemaking petition explained how the IRS's regulation permits section 501(c)(4) organizations to engage in substantial electoral campaign expenditures without disclosing their donors, described how politically active section 501(c)(4) organizations had

engaged in tens of millions of dollars of electoral campaign spending without donor disclosure in the 2010 election cycle, and pointed to evidence that even more substantial spending by section 501(c)(4) organizations in the 2012 election cycle was likely. *See* Exhibit B, at 5–12.

35.     The rulemaking petition requested that the IRS "promptly issue new regulations that properly define the statutory requirement for section 501(c)(4) organizations to be 'operated exclusively' for social welfare purposes to mean that campaign activity may not constitute more than an insubstantial amount of the activities of a group organized under section 501(c)(4)." Exhibit B, at 16. The petition explained that such action was necessary both to bring the IRS's rules into conformity with the IRC and also to prevent politically active organizations from improperly using section 501(c)(4) to reap the benefits of tax exemption while "keep[ing] secret from the American people the sources of tens of millions of dollars being spent by the section 501(c)(4) organizations to influence federal elections." *Id.* at 17-18. Because the "large scale spending of secret contributions in federal elections by section 501(c)(4) organizations is doing serious damage to the integrity and health of our democracy and political system," *id.* at 18 the petition requested that the IRS "act expeditiously to ensure that the new regulations are in effect in time for the 2012 elections." *Id.* at 19.

36.     The IRS did not take prompt action in response to the petition.

37.     On March 22, 2012, Democracy 21 and the Campaign Legal Center sent a letter to then-Commissioner of Internal Revenue Douglas Shulman and then-Director of the IRS's Exempt Organizations Division Lois Lerner. The letter is attached to this Complaint as Exhibit C.

38.     Plaintiffs' March 22, 2012, letter apprised the IRS of "developments in the course of the 2012 national elections" that "have served to underscore the fact that inadequate and

flawed IRS regulations are facilitating widespread misuse of the tax laws by organizations claiming tax-exempt status under section 501(c)(4) in order to keep secret the donors financing their candidate campaign-related expenditures." Exhibit C, at 1. Referencing a series of letters that the two groups had sent to the IRS documenting ongoing electoral campaign intervention by section 501(c)(4) organizations, the letter pointed out that increasing electoral campaign expenditures by such organizations necessitated that the IRS "promptly institute a rulemaking proceedings to address this matter" and requested that the IRS respond "regarding what action the agency is prepared to take." *Id*. at 4.

40. Four months later, on July 20, 2012, Ms. Lerner sent Democracy 21 and the Campaign Legal Center a three-paragraph letter responding to their letter of March 22, 2012. The IRS's July 20, 2012, letter is attached to this Complaint as Exhibit D. The letter stated that the IRS was "aware of the current public interest in this issue." It observed that the challenged regulation has "been in place since 1959," and it stated that "[w]e will consider proposed changes in this area as we work … to identify tax issues that should be addressed through regulations and other public guidance."

40. Democracy 21 and the Campaign Legal Center immediately responded with a letter to Mr. Shulman and Ms. Lerner dated July 23, 2012. The letter is attached as Exhibit E to this Complaint. The letter stated that "we believe the 'proposed changes in this area' that Ms. Lerner says the IRS will now consider are crucially important and need to be made with urgency." Exhibit E, at 2. The letter pointed out that electoral campaign spending by section 501(c)(4) groups had "grown exponentially" since the rulemaking petition was filed a year earlier, *id.*, and it cited examples of plans by a number of such organizations to spend tens of

millions of dollars in the 2012 elections. The letter again urged the IRS to act promptly to institute a rulemaking proceeding. *Id.* at 5.

41.     The IRS took no action before the 2012 elections, and, as a result, the large-scale electoral campaign intervention by section 501(c)(4) organizations in those elections predicted in the petition for rulemaking and the subsequent letters to the IRS from Democracy 21 and the Campaign Legal Center occurred. On January 4, 2013, representatives of Democracy 21 and the Campaign Legal Center met with Ms. Lerner and other IRS officials regarding the petition for rulemaking and to urge the IRS to move promptly on the request. The IRS officials present at the meeting provided no substantive information on whether or when they would respond to the petition for rulemaking.

42.     The IRS has never granted, denied, or provided any substantive response to the rulemaking petition. The IRS has neither provided any explanation of how its regulation is consistent with the statutory requirement that section 501(c)(4) organizations operate exclusively to promote social welfare, nor taken any public action to initiate a rulemaking proceeding to conform its regulation to the statute.

43.     The IRS's inaction permitted huge electoral campaign expenditures by section 501(c)(4) organizations without donor disclosure in the 2012 election cycle. The agency's continued inaction allows similar expenditures without donor disclosure to be made in the 2014 congressional elections and succeeding election cycles and makes such expenditures inevitable.

## The IRS's "Safe Harbor" Directive

44.     Instead of acting to bring its regulations permitting substantial election campaign intervention by section 501(c)(4) organizations into conformity with the statute's requirements, the IRS has taken action that ratifies the views of some politically active section 501(c)(4)

organizations that they may expend nearly half their resources on electoral campaign intervention and still qualify for tax exemption under section 501(c)(4).

45.     In the June 24, 2013, *Charting a Path* report, the IRS revealed that it has directed its personnel to recognize tax exemption for certain putative section 501(c)(4) organizations that represent that they will expend (i) at least 60% of their time and money on social welfare activities and (ii) less than 40% of their time and money on election campaign intervention. Organizations that are part of the IRS's "priority backlog" of delayed applications for 501(c)(4) tax-exempt status and that meet these criteria are entitled to a "safe harbor" and will be "presumed" eligible for tax exemption under section 501(c)(4). Exhibit A, at 24-25 and Appendix E to Exhibit A, at 4.

46.     The IRS has further directed its personnel that even those "priority backlog" organizations that do not qualify for the "safe harbor" because they expend more than 40% of their resources on electoral campaign intervention may be eligible for tax exemption under section 501(c)(4), depending on the "facts and circumstances" of their activities. Exhibit A, at 25 & Appendix E to Exhibit A, at 3.

47.     The IRS's new directive thus makes clear the quantity of electoral activity that the IRS's "primarily engaged" standard permits section 501(c)(4) organizations to conduct : If those activities do not exceed 40% of an organization's time and money, the IRS will consider it presumptively eligible for tax exemption under § 501(c)(4), but the IRS will, depending on circumstances, permit even greater amounts of election campaign intervention.

**Injuries Attributable to the IRS's Unlawful Construction of Section 501(c)(4)**

48.     The IRS's ongoing failure to revise its regulations to prohibit substantial electoral campaign expenditures by groups claiming tax exemption under Section 501(c)(4), and its recent directive allowing such organizations to expend substantial percentages of their resources on

electoral campaign activity, have resulted and will continue to result in large amounts of electoral campaign spending by such groups without donor disclosure. The lack of disclosure directly injures plaintiffs Democracy 21, Campaign Legal Center, and Public Citizen. Each of these organizations engages in studies and/or publishes information concerning the sources of funding of politically active groups and the resulting influence that is brought to bear on the formation of public policy. Concealment of the sources of funding of politically active section 501(c)(4) interferes with the ability of these plaintiffs to carry out these activities by denying them information essential to their efforts.

49.     Plaintiff Public Citizen is a membership organization with members who are voters in all fifty states and the District of Columbia. These voters are injured when they are denied information about the sources of funding of organizations that make political expenditures supporting or opposing candidates who seek their votes, as information concerning who is behind such expenditures would help them evaluate the arguments presented in the election campaigns as well as the candidates who benefit from or are the targets of those arguments. The IRS's facilitation of electoral campaign spending by section 501(c)(4) organizations without donor disclosure interferes with the important interests of Public Citizen's members in knowing who is speaking about candidates shortly before elections and limits their ability "to make informed decisions and give proper weight to different speakers and messages," which disclosure would foster. *Citizens United*, 558 U.S. at 371.

50.     Revision of the IRS's regulations to prevent substantial electoral campaign expenditures by section 501(c)(4) organizations, and revocation of its recent directive providing a "safe harbor" for electoral campaign activities amounting to up to 40% of certain section 501(c)(4) organizations' resources and permitting even greater expenditures in some cases,

would result in increased availability of public information about the donors behind electoral campaign expenditures by shifting expenditures currently made by section 501(c)(4) organizations to political committees and other groups claiming tax exemption under section 527, which are required to report the identity of donors.

51.     Plaintiff Van Hollen is injured by the IRS's ongoing failure to comply with the requirements of section 501(c)(4) because the IRS's action and inaction permits organizations that are his political competitors and potential political competitors to obtain an improper benefit—the advantage of tax exemption without the requirement of donor disclosure. Representative Van Hollen is injured by the resulting illegal structuring of a competitive environment, which directly affects his interests. Representative Van Hollen's campaign committee must disclose its donors under FECA, but any section 501(c)(4) organization spending money to oppose Representative Van Hollen's reelection can, notwithstanding substantial electoral campaign expenditures, receive both a tax exemption and an exemption from disclosure obligations as a result of the IRS's unlawful regulation and its recent directive interpreting the regulation to allow substantial electoral campaign spending by section 501(c)(4) organizations.

52.     Similarly, Representative Van Hollen's leadership PAC, the Victory Now PAC, is tax-exempt under section 527 but must disclose its donors. Candidates that Representative Van Hollen supports through the efforts of the Victory Now PAC, however, face opposition from organizations that, as a result of the IRS's unlawful regulation, receive both tax exemption and exemption from disclosure obligations. For example, in the 2012 election cycle, Representative Van Hollen's Victory Now PAC supported Representative Leonard Boswell for reelection in the election in Iowa's Third Congressional District. Crossroads GPS, a section 501(c)(4)

organization, spent over $1 million against Rep. Boswell, who was defeated. The ability of section 501(c)(4) organizations to make expenditures that are improper under the IRC in elections in which Representative Van Hollen's political committee is also participating injures Representative Van Hollen. Representative Van Hollen intends to continue to support candidates through his leadership PAC in races in which, absent action by the IRS to revise its regulation, he will face unlawful political competition from section 501(c)(4) organizations.

53.     As a national leader of his political party and, in particular, its efforts to campaign for seats in the United States House of Representatives, Representative Van Hollen is also injured by the denial of information about the donors to section 501(c)(4) organizations that oppose the candidates of his party. Information about the donors behind the electoral campaign expenditures made by such organizations would be of strategic importance to Representative Van Hollen and would assist him and his party in creating messages to respond to those expenditures and appeal to potential voters.

54.     Action by the IRS to conform its regulations and practices to the requirements of the IRC would correct the illegal structuring of the competitive political environment in which Representative Van Hollen participates, and would also provide him with increased access to information about the donors behind electoral campaign expenditures as political spending shifted to organizations required to report their donors.

### First Claim for Relief
### Agency Action Unlawfully Withheld and Unreasonably Delayed
### (5 U.S.C. § 706(1))

55.     The APA provides a right of action for persons aggrieved by agency inaction to compel agency action unlawfully withheld or unreasonably delayed and to set aside agency action (including an agency's failure to act) that is arbitrary, capricious, and abuse of discretion, or not in accordance with law. 5 U.S.C. §§ 702, 703, 704, 706(1) & 706(2).

56.     The defendants' failure to initiate a rulemaking to amend TR § 1.501(c)(4)-1(a)(2)(i) is unlawful because, by requiring only that section 501(c)(4) organizations be engaged "primarily" in activities to promote the social welfare and permitting them to engage in substantial activities, including election campaign intervention, that do not promote social welfare within the meaning of section 501(c)(4), the regulation is contrary to the plain meaning of IRC section 501(c)(4)'s requirement that tax-exempt social welfare organizations be "exclusively" engaged in activities promoting social welfare.

57.     The defendants' failure to initiate a rulemaking to amend TR § 1.501(c)(4)-1(a)(2)(i) is also arbitrary and capricious, as the agency has provided no reasoned explanation for its failure to conform its regulation to the requirements of IRC § 501(c)(4).

58.     Despite their duty under the APA to take action on matters before them in a reasonable time, 5 U.S.C. § 555(b), the defendants have delayed unreasonably in acting on the petition to initiate a rulemaking to amend TR § 1.501(c)(4)-1(a)(2)(i). In light of the clear incompatibility of the existing regulation with the governing statute, as well as the need to act promptly to prevent another election cycle from being adversely affected by immense electoral campaign expenditures without disclosure of donors, the two years that have passed without action on the petition constitute an excessive and unreasonable delay.

59.     Plaintiffs Van Hollen, Democracy 21, Campaign Legal Center, and Public Citizen are persons aggrieved by the defendants' failure to take action to conform TR § 1.501(c)(4)-1(a)(2)(i) to the requirements of section 501(c)(4).

**Second Claim for Relief**
**Agency Action That Is Arbitrary, Capricious,**
**an Abuse of Discretion, or Not in Accordance with Law**
**(5 U.S.C. § 706(2)(A))**

60.     The APA provides a right of action for persons aggrieved by final agency action to set aside such action if it is arbitrary, capricious, and abuse of discretion, or not in accordance with law. 5 U.S.C. §§ 702, 703, 704, & 706(2).

61.     The IRS's recent directive indicating that it will presumptively permit election campaign activities by a section 501(c)(4) organization that constitute less than 40% of its time and expenditures, and will also allow tax exemption under section 501(c)(4) even where electoral campaign activities exceed the 40% threshold depending on the "facts and circumstances," constitutes final agency action.

62.     The IRS's directive is arbitrary, capricious, an abuse of discretion, and not in accordance with law because it permits section 501(c)(4) organizations to engage in substantial election campaign intervention in violation of section 501(c)(4)'s requirement that such organizations devote themselves "exclusively" to social welfare activities, which do not include election campaign intervention.

63.     Plaintiffs Van Hollen, Democracy 21, Campaign Legal Center, and Public Citizen are persons aggrieved by the defendants' directive permitting section 501(c)(4) organizations to engage in substantial election campaign expenditures.

**Relief Requested**

Wherefore, the plaintiffs pray for the following relief:

i.     an order declaring that the defendants' failure to initiate a rulemaking to amend the IRS's regulations is contrary to law as well as arbitrary and capricious, and that the defendants have delayed unreasonably in initiating such a rulemaking;

ii.      an injunction, or, in the alternative, a writ of mandamus, compelling the defendants to initiate a rulemaking to amend the IRS's regulations to prohibit electoral campaign expenditures that violate section 501(c)(4) within 30 days of the Court's order;

iii.      a declaration that the IRS's directive allowing certain section 501(c)(4) applicants a "safe harbor" is arbitrary, capricious, an abuse of discretion, and contrary to law to the extent that it reflects the position that a 501(c)(4) organization may spend 40% or more of its resources on electoral campaign intervention; and

iv.      any and all other proper relief.

Respectfully submitted,

Fred Wertheimer, DC Bar No. 154211
DEMOCRACY 21
2000 Massachusetts Avenue, NW
Washington, DC 20036
(202) 429-2008

Donald J. Simon, DC Bar No. 256388
SONOSKY, CHAMBERS, SACHSE
  ENDRESON & PERRY, LLP
1425 K Street, NW, Suite 600
Washington, DC 20005
(202) 682-0240

s/Scott L. Nelson
Scott L. Nelson, DC Bar No. 413548
Allison M. Zieve, DC Bar No. 424786
PUBLIC CITIZEN LITIGATION GROUP
1600 20th Street, NW
Washington, DC 20009
(202) 588-1000
snelson@citizen.org

J. Gerald Hebert, VA Bar No. 38432
Paul S. Ryan, DC Bar No. 502514
THE CAMPAIGN LEGAL CENTER
215 E Street, NE
Washington, DC  20002
(202) 736-2200

*Attorneys for Plaintiffs*

August 21, 2013